UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


John M. Antonis

      v.                      Civil No. 07-cv-163-JL
                                 Opinion No. 2008 DNH 204

Electronics for Imaging, Inc.


# O R D E R

The plaintiff, John M. Antonis, filed this action against
his former employer, Electronics for Imaging, Inc. ("EFI"),
alleging wrongful discharge under New Hampshire common law.  EFI
has filed a motion for summary judgment.  <u>See</u> Fed. R. Civ. P. 56
(2008).  This court has jurisdiction under 28 U.S.C. § 1332
(a)(1) (2000) (diversity).  After oral argument and for the
reasons set forth below, this court grants the defendant's motion
for summary judgment.


## I.   **APPLICABLE LEGAL STANDARD**

Summary judgment is appropriate if, viewing the record in
the light most favorable to the non-moving party, "the pleadings,
the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); <u>see</u> <u>Goldman v. First Nat'l Bank of</u>
<u>Boston</u>, 985 F.2d 1113, 1116 (1st Cir. 1993) (decided under prior
version of the rule).  In ruling on a motion for summary
judgment, the court must view all facts in the light most
favorable to the non-moving party, drawing all reasonable
inferences in that party's favor.  <u>Maldonado-Denis v. Castillo-</u>
<u>Rodriquez</u>, 23 F.3d 576, 581 (1st Cir. 1994).  A material fact is
one that, under the prevailing substantive law, affects the
outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
242, 248 (1986).  A genuine issue is one that is properly
resolved only by a fact finder because it is one that reasonably
could be decided in favor of either party.  <u>See</u> <u>id.</u> at 250;
<u>Maldonado-Denis</u>, 23 F.3d at 581.

     "The very mission of the summary judgment procedure is to
pierce the pleadings and to assess the proof in order to see
whether there is a genuine need for trial." <u>DeNovellis v.</u>
<u>Shalala</u>, 124 F.3d 298, 305-06 (1st Cir. 1997) (quotations
omitted).  The moving party has the initial burden to demonstrate
the absence of genuine issues of fact that might affect the
outcome of the case.  <u>See</u>, <u>e.g.</u>, <u>Anderson</u>, 477 U.S. at  248.
Once the moving party has met this burden, the non-movant must
"go beyond the pleadings" and demonstrate specific facts to
establish the existence of a genuine issue for trial.  <u>Celotex</u>

2

<u>Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>see</u> Fed. R. Civ. P. 56(e).  "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve."  <u>Nat'l Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995) (quotations, brackets and ellipses omitted).  "There is no trialworthy issue unless there is enough competent evidence to enable a finding favorable to the non-moving party."  <u>Goldman</u>, 985 F.2d at 1116.

Accordingly, even in wrongful discharge cases, "where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  <u>Id.</u> (quotations omitted.)

**II.  BACKGROUND**

The record reveals the following facts.  <u>See</u> Fed. R. Civ. P. 56(c).  Antonis, a resident of Alexandria, New Hampshire, was initially hired as a temporary employee by VUTEk, a predecessor company to EFI, at its Meredith, New Hampshire manufacturing plant in May 1996.  He became a full time at-will employee with VUTEk on August 26, 1996 and held a number of positions in testing, quality assurance, and manufacturing at the Meredith

3

facility.  He also was a member and sometime chairman of the plant's "safety committee."

In June, 2005, EFI acquired VUTEk, and Antonis continued his at-will employment as Acting Manager of Quality Assurance.  In June 2006, Laura Cranmer was named Vice President of Manufacturing.  Cranmer undertook a plant-wide reorganization that summer.  She offered Antonis a choice between taking a position as a testing manager or remaining in quality control.  According to both Antonis and Cranmer, he chose to become the Training, Certification and Safety Manager in charge of identifying safety issues at the plant, safety training for other employees, and safety certification.  The parties agree that a substantial part of Antonis's job was to assist the company in qualifying for and maintaining "ISO 9000" certification under a safety program administered by the International Organization for Standardization.  He also remained on the Safety Committee.

On January 10, 2007, Antonis was terminated by EFI.  He was offered a severance package that included a payment of $15,604.  Antonis refused the offer and instead filed this lawsuit.

The parties dispute the factual basis for Antonis's dismissal.  Antonis contends that because he reported safety issues to EFI's management, the company "engaged in a series of activities designed to humiliate, belittle and obstruct [his]

4

efforts" that ultimately led to his dismissal.  He contends that
although some of EFI's management agreed with his stated safety
concerns, EFI nonetheless humiliated and harassed him by:  (1)
relocating his private office onto the manufacturing floor, (2)
assigning him additional menial tasks in manufacturing and
safety, and (3) falsely raising suspicions that Antonis was
responsible for a surprise safety inspection by state
authorities.

EFI answers that Antonis was terminated because the company
decided to no longer pursue the ISO 9000 certification, making
his position as safety manager obsolete.  EFI also contends that
although he was officially terminated because of a job
elimination, and thus entitled to a severance package, his
performance had been substandard.[1]  Further, EFI asserts that

---

[1] According to the record, EFI's management had issues with
Antonis's decision to spend time on safety conditions in the
company ink laboratory (a task assigned to Antonis's superior)
instead of focusing on projects assigned directly to him.  This
conflict led to concerns about Antonis's productivity.  In
October 2006, management prepared a "Performance Improvement
Plan" (PIP) for Antonis, outlining tasks he needed to complete or
potentially be subject to termination.  The parties vehemently
dispute whether Antonis successfully performed under the PIP.
For purposes of this motion, this court will focus only on the
reason stated in Antonis's dismissal letter, namely, that his
position was eliminated.  Cf. Anderson, 477 U.S. at 248 (when
considering a motion for summary judgment "[f]actual disputes
that are irrelevant or unnecessary will not be counted").

Antonis's claim that he was fired for reporting safety concerns "lacks any credible support" since reporting safety violations was his job.  EFI alleges that it took Antonis's complaints seriously, addressing the issues he raised and hiring an outside safety consulting firm to review safety conditions and make recommendations for improvement.  Indeed, EFI notes that even Antonis agreed that Cranmer took a "very tough approach to health and safety."

**III. <u>ANALYSIS</u>**

In general, at-will employment may be terminated by either party with or without cause.  <u>See</u> <u>Cloutier v. Great Atl. & Pac. Tea Co., Inc.</u>, 121 N.H. 915, 919 (1981).  New Hampshire, however, has a judicially created exception to the at-will rule, such that at-will employees may recover in tort for wrongful discharge.

---

This court notes that shifting reasons for dismissal may be viewed as raising an inference of pretext.  <u>See</u> <u>E.C. Waste, Inc. v. NLRB</u>, 359 F.3d 36, 44 (1st Cir. 2004).  In this instance, although EFI's position as to the impact of Antonis's alleged substandard performance arguably shifted between its summary judgment motion and its reply to Antonis's objection, the dispute over job performance is immaterial.  Both parties agree that a plant-wide reorganization took place and it is undisputed that the ISO 9000 program was eliminated.  The issue here is thus whether EFI's decision to eliminate Antonis's position as part of that reorganization was motivated by bad faith, or was a permissible management decision.

See <u>Porter v. City of Manchester</u>, 151 N.H. 30, 39 (2004).  To
state a wrongful discharge claim, a plaintiff must allege:
"(1) that the termination of employment was motivated by bad
faith, retaliation or malice; and (2) that [he] was terminated
for performing an act that public policy would encourage or for
refusing to do something that public policy would condemn."
<u>Lacasse v. Spaulding Youth Cent.</u>, 154 N.H. 246, 248 (2006)
(quotations and brackets omitted).  The first prong focuses on
the nature of the employer's actions, while the "public policy"
prong pertains to the employee's acts.  See <u>Porter</u>, 151 N.H. at
38.

     EFI, in its motion, does not dispute the "public policy"
element of Antonis's claim.  Rather, it contends that, as a
matter of law, Antonis cannot demonstrate that EFI terminated his
employment because of bad faith, malice or retaliation.  <u>Id.</u>

     Under New Hampshire law, "bad faith" is the equivalent of
malice.  See, <u>e.g.</u>, <u>MacDonald v. Tandy Corp.</u>, 796 F. Supp. 623,
627 (D.N.H. 1992), <u>aff'd</u> 983 F.2d 1046 (1st Cir. 1993) (<u>citing</u>
<u>Centronics Corp. v. Genicom Corp.</u>, 132 N.H. 133, 140 (1989)).
While bad faith or malice comes in various forms, it is not bad
faith to terminate an employee for legitimate business reasons.
See <u>Straughn v. Delta Airlines, Inc.</u>, 250 F.3d 23, 44-45 (1st
Cir. 2001) (no bad faith where employee discharged for

7

dishonesty); <u>MacDonald</u>,796 F. Supp. at 627-28 (no bad faith where employee was fired because he was suspected of stealing money from the company); <u>cf.</u> <u>Bourque v. Town of Bow</u>, 736 F.Supp. 398, 402-03 (D.N.H. 1990) ("a discharge for business reasons is not actionable").

Bad faith can be discerned from a course of events surrounding an employee's discharge, <u>see</u>, <u>e.g.</u>, <u>Cloutier</u>, 121 N.H. at 921; <u>Monge v. Beebe Rubber Co.</u>, 114 N.H. 130, 133-34 (1974), demonstrating a causal link between the dismissal and improper motive.  <u>Cf. Straughn</u> 250 F.3d at 45.  The First Circuit Court of Appeals has observed that bad faith "may be established under New Hampshire law where (i) an employee is discharged for pursuing policies condoned by the employer, (ii) the record does not support the stated reason for the discharge, or (iii) disparate treatment was administered to a similarly situated employee."  <u>Straughn</u>, 250 F.3d at 44 (relying on <u>Cloutier</u>, 436 N.H. at 1143-44).  "[M]ere temporal proximity" between the employee's act and subsequent firing is not sufficient to demonstrate bad faith.  <u>Id.</u>, 250 F.3d at 45.

EFI contends that it is entitled to summary judgment because it dismissed Antonis for legitimate business reasons and no reasonable jury could find that Antonis was dismissed because of bad faith or retaliation on the part of EFI.  This court agrees.

8

There is ample record support for EFI's stated reason for terminating Antonis.  In her affidavit, Cranmer stated that Antonis was dismissed because the company decided to eliminate the ISO 9000 program, rendering Antonis's job obsolete.  Antonis conceded at the hearing that the reorganization did in fact take place and that the company abandoned the ISO 9000 program as a result.  As noted above, both parties agree that management of the ISO 9000 program was an important part of Antonis's duties. Further, Antonis's dismissal letter stated that he was entitled to receive severance benefits.  Cranmer stated that according to company policy, such benefits are reserved for employees who were not dismissed for cause.  EFI has therefore demonstrated that there were legitimate reasons behind Antonis's dismissal.

Antonis contends, however, that his "duties did not simply disappear in their entirety, but [were] reassigned to other individuals . . . to allow the defendant to claim that the plaintiff's job was no longer necessary."  This theory in no way undermines EFI's stated reason for terminating Antonis so as to create a triable issue on whether the company acted in bad faith. First, Antonis has not come forward with any evidence that his duties were in fact reassigned to other employees, apart from a co-worker's statement to the effect that, given the burden of those duties, they must have been.  This sort of speculation

9

cannot defeat summary judgment.  See Rathbun v. Autozone, Inc.,
361 F.3d 62, 66 (1st Cir. 2004).  Second, even if Antonis's
former duties were reassigned to other employees, an employer's
decision to affect such a reassignment--even if done to eliminate
a particular job--is not in and of itself wrongful; it is common
knowledge that employers often redistribute the same workload
among fewer employees as a means of streamlining their
operations.  Employers are entitled to avail themselves of such
measures without incurring liability for wrongful discharge.[2]

Antonis also contends that the reorganization was "designed
in whole or in part to conclude [his] employment."  But, assuming
that a reorganization accomplished as a pretext for dismissing a
particular employee evinces the "bad faith" necessary to support
a wrongful discharge claim, Antonis has offered no evidence to
that effect anyway.  He alleges that EFI was unhappy that he
vigorously pursued his duties as a safety officer, which, if it
was in fact the reason his position was eliminated, could

---

[2]  Antonis complains that he "had been a long term employee of
the company (in excess of ten years) and was terminated as
opposed to being offered reassignment to another position in the
company."  But there is generally no duty in an at-will
employment relationship to replace a position that was eliminated
or "down-sized" due to prevailing business conditions.  Cf.
Cloutier, 121 N.H. at 920 (at-will rule "retains its vitality"
except where there are judicial or legislative exceptions or
collective bargaining agreements).

arguably amount to bad faith on the theory that he was fired for pursuing his employer's own policies.  See Straughn, 250 F.3d at 44.  But his evidence on this is speculative at best, and even construing the record in a light most favorable to Antonis, he has not established a genuine issue of material fact.

Antonis does not dispute that EFI addressed most of his safety concerns, and even retained an outside safety consultant to assess the safety conditions at the plant.  He acknowledged that Cranmer took a "tough approach" to health and safety issues on the production floor, and expected every employee to "take safety seriously."[3]  It is difficult to infer from these undisputed facts that EFI was displeased with Antonis's pursuit of workplace safety.

Antonis also claims bad faith based on management's alleged unhappiness with his choice to pursue a safety plan for EFI's ink lab.  It is undisputed, however, that EFI was displeased because Antonis spent work time on the ink lab project even though it was assigned to another safety officer, Craig Moore.  Despite Antonis's attempt to recast it as proof of malice, this evidence

---

[3]  At the hearing, there was much discussion of another claim by Antonis, namely that he was fired for taking pictures of safety conditions at the plant.  In his deposition, however, Antonis acknowledged that others took pictures as well and were not fired.  This theory is insufficient to support Antonis's claim.

of "bad faith" demonstrates nothing but a disagreement over EFI's management decisions.   Courts are reluctant to interfere with internal management decisions of private employers.   Cf. Bourque, 736 F. Supp. at 402-03 (noting that there is no cause of action where an employee is dismissed for complaining about poor management).   Here, the safety issues that Antonis complained about were either addressed by management or assigned to another employee.

Antonis also attempts to establish bad faith or malice by showing that EFI "harassed" and "humiliated" him.   Specifically, Antonis contends that during the reorganization, his private office was eliminated and he was moved to the middle of the manufacturing floor, which was noisy and lacked privacy.[4]

Even assuming that this type of slight could give rise to an inference of bad faith in a subsequent termination, the undisputed fasts show that EFI had a legitimate business reason for moving Antonis's work space.   During his deposition, Antonis

---

[4] Antonis also contends that EFI harassed him by asking him to assist with manufacturing projects that were outside the scope of his duties in the safety department.   In his deposition, however, Antonis admitted that he was not the only member of management asked to assist with the manufacturing process when necessary.   In fact, he stated in his deposition that it did not bother him to be asked to help out and that "I liked being the hero."   This claim likewise does not demonstrate a pattern of harassment or retaliation targeted at Antonis.

acknowledged that other members of the management team, including Cranmer, lost their private offices as part of an effort to maximize production space and capacity.  Although Antonis was the only employee moved directly to the production floor,[5] he acknowledged that other employees would have eventually been moved there as well.

Antonis also contends that he was wrongfully terminated due to EFI's mistaken belief that he reported unsafe conditions to state authorities.  Specifically, he asserts that management blamed him for a surprise inspection of the Meredith facility by the state Department of Environmental Services in November 2006.

To survive summary judgment, a plaintiff must present more than inferences based on "tenuous insinuation," <u>Rosenfeld v. Egy</u>, 346 F.3d 11, 17 (1st Cir. 2003), and here, that is all Antonis presents.  He relies entirely on an ambiguous comment by a quality assurance manager whose meaning was not even immediately apparent to him.  Specifically, after the inspection, quality assurance manager David Parker went to Antonis and

> said, "[W]hen did you know about this?" and I said, "[A]bout two minutes after they entered the door," and he just looked at me and shook his head.  I don't know whether he didn't believe me, but then it started to

---

[5] The others were relocated above the production floor on the mezzanine level.

> get into my head, he thinks I called these people and
> knew they were coming and didn't inform anyone.

Antonis admits that there is no additional evidence to support his belief.  "While ambiguous remarks may, under some circumstances, help to illuminate the summary judgment record, such remarks rarely will suffice to conceive an issue of material fact when none otherwise exists."  Rosenfeld, 346 F.3d at 16 (quotations omitted).  Parker's question and head shake, even if interpreted as Antonis does, do not suffice.

Finally, Antonis contends that this court can discern bad faith from the manner in which he was discharged, i.e., he was escorted to the door of the facility and not allowed to retrieve his personal belongings until the following Saturday.  Although a trier of fact can infer bad faith from the circumstances of an employee's discharge, cf. Cloutier, 121 N.H. at 921, this is plainly insufficient.  Not only is this practice commonplace, but, in Antonis's case, it was accompanied by an offer of a $15,000 severance package.

The circumstances of Antonis's dismissal, either individually or collectively, simply cannot support the showing of bad faith or malice necessary to prevail on his wrongful discharge claim.

14

V.      **CONCLUSION**

This court concludes, therefore, viewing the record in a light most favorable to Antonis and drawing all reasonable inferences therefrom, that EFI is entitled to summary judgment. Simply put, EFI has demonstrated "an absence of evidence" to support Antonis's claim, <u>Maldonado-Denis</u>, 23 F.3d at 581 (quotations omitted), and Antonis did not present to the court sufficient "competent evidence to rebut the motion." <u>Id.</u> (Internal quotation marks omitted.)

The defendant's Motion for Summary Judgment (document no. 16) is granted. The plaintiff's claim is dismissed with prejudice. All other pending motions are denied as moot. The clerk shall close the case.

_____
Joseph N. Laplante
United States District Judge

Dated:  November 25, 2008

cc:  Paul T. Fitzgerald, Esq.
     Linda S. Johnson, Esq.
     Michael T. Pearson, Esq.
     Adam M. Hamel, Esq.